STATE OF CONNECTICUT *v.* GREGORY J. CORREA
(AC 18505)

Foti, Landau and Daly, Js.

Argued January 14—officially released March 28, 2000

*Jennifer Rodriguez* and *Scott Leventhal*, certified legal interns, with whom was *Pamela S. Nagy*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan*, state's attorney, and *Mitchell Rubin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Gregory J. Correa, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103.[1] On appeal, the defendant claims that (1) the trial court improperly refused to grant the defendant an evidentiary hearing on his motion to suppress, (2) his constitutional rights were violated by the seizure of evidence from his home, (3) there was insufficient evidence to convict him and (4) the trial court improperly admitted an out-of-court statement into evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, Andrea Martin, and her family resided at 6 Maple Street in Darien. On January 7, 1997, the victim and her infant daughter were absent from their home from approximately 11:45 a.m. to 2 p.m. When she returned, the victim observed her home in disarray. She immediately went to a neighbor's house and telephoned the police. Officers W. Scott Conlon and Saverio Boccuzzi of the Darien police department responded and discovered that an exterior and an interior door had been forcibly opened. The victim immediately determined that two pearl necklaces and two rings were missing.

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

Earlier, George Flay, who owned Rio Radio, a business adjacent to the victim's home, observed an unfamiliar red motor vehicle parked in a spot reserved for his business tenant. He noted distinctive features about the automobile and recorded its marker number on a piece of paper. When Flay returned from lunch, he saw police at the victim's home and told them of the unfamiliar vehicle, giving them the note containing the marker identification.

At about 12:30 p.m. that day, Vincent Lopiano, an employee of a business on Maple Street, was returning from lunch when he saw a tall, dark-skinned Hispanic man, about thirty years old, with a mustache, wearing a tan waist-length jacket and blue jeans in the victim's driveway.[2] Lopiano watched the man walk toward Rio Radio. Later, when he saw the police at the victim's home, Lopiano approached them and gave them a description of the man he had seen in the driveway.

Detective Donald Anderson learned from the department of motor vehicles that the red automobile was registered to Sharon Whitley, who lived in New Haven. On January 8, 1997, Anderson and Detective Ray Osborne went to the New Haven address and observed the red automobile. They telephoned Whitley, who agreed to talk to them. When the detectives entered Whitley's apartment, they heard a shower running and observed a tan leather jacket draped over a chair. The defendant, who fit the description given by Lopiano, emerged from the bathroom and admitted to having used the red automobile the previous day but denied having been in Darien. The detectives telephoned Lieutenant Ronald Bussell, who instructed them to secure the apartment until warrants to search the apartment

---

[2] Police showed Lopiano an array of eight photographs, including one of the defendant. Lopiano was not able to make a positive identification, but he selected two photographs, including one of the defendant, as resembling the man in the victim's driveway.

and the automobile were delivered. The detectives informed the defendant that a search warrant was on its way and that they had to secure the apartment. They did not permit the defendant to leave with his laundry or the tan leather jacket.

About one hour later, Bussell arrived with search warrants authorizing the police to look for and confiscate four pieces of women's jewelry,[3] a black leather ring box, a black felt ring box and a tan waist-length jacket. Whitley was given copies of the search warrants. While searching the apartment, the police found a pair of gold cuff links in a Tiffany bag in a pair of large blue jeans. The victim identified the cuff links as matching a pair she had purchased as a gift for her husband and said that the Tiffany bag was the same size and type as one she had had in her home. The defendant was arrested six weeks after the burglary, pursuant to an arrest warrant issued on January 15, 1997. The defendant was convicted, and he filed a motion for a new trial, which was denied. The defendant appealed. Additional facts will be stated where necessary.

I

The defendant's first claim is that the court improperly denied his motion to suppress the evidence the police seized from his apartment on January 8, 1997, specifically, the gold cuff links and the Tiffany bag, because they were not listed on the search warrants. The defendant requests an evidentiary hearing or a new trial. We conclude that the court did not abuse its discretion, and the relief requested by the defendant is not warranted.

The following facts are relevant to this claim. Defense counsel was appointed in March, 1997. A pretrial status

---

[3] The warrant authorized the police to seize a small diamond ring, a ring containing two diamonds and three sapphires, a pearl necklace and an artificial pearl necklace.

conference was held on July 13 and 16, 1997, the defendant filed a motion for a speedy trial. Jury selection began on January 13, 1998, and on that date the court heard two motions in limine filed by the defendant.[4] On January 15, 1998, the defendant obtained a copy of the warrant to search the apartment from the Darien police department. That day, he filed a motion to suppress the evidence seized on January 8, 1997.[5] Prior to January 15, 1998, a copy of the search warrant had not been placed in either the state or court files. Jury selection was completed on January 18, 1998. Several juries were selected at about that time and "stacked," a procedure whereby a jury is picked for a trial to begin sometime in the future.

On January 27, 1998, immediately before the commencement of evidence in the case, the court heard arguments on the defendant's motion to suppress, during which the court questioned whether the motions were timely under Practice Book §§ 41-4 and 41-5. Defense counsel argued that the motion was timely because she had just received a copy of the warrant on January 15, 1998, and she requested an evidentiary hearing on the motion to suppress, which would last one and one-half days. The defendant argued that the cuff links and Tiffany bag were illegally seized because they were not identified in the search warrant. Defense counsel argued that Practice Book §§ 40-11 and 40-13 require the state to disclose pretrial statements by witnesses and that the contents of the search warrant constituted a statement for which a hearing was

---

[4] At that time, the court also discussed the defendant's aborted pursuit of an alibi defense.

[5] "Upon motion, the judicial authority shall suppress potential testimony or other evidence if it finds that suppression is required under the constitution or laws of the United States or the state of Connecticut." Practice Book § 41-12.

required to give him an opportunity to confront fully the witnesses against him.[6]

The prosecutor argued against the motion to suppress on the basis of timeliness. The court denied the motion, pursuant to Practice Book § 41-5, "on the basis of the totality of the circumstances, the timing and the filing of the motion on the eve of trial after the jury [was] picked." After the jury rendered its verdict, the defendant filed a motion for a new trial, which the court also denied.

The abuse of discretion standard governs our review of the court's denial of an evidentiary hearing on a motion to suppress. See *State* v. *Fiocchi*, 17 Conn. App. 326, 334 n.9, 553 A.2d 181, cert. denied, 210 Conn. 812, 556 A.2d 609 (1989). "A motion under Sections 41-12 through 41-17 shall be made before trial or hearing in accordance with Section 41-5 unless opportunity therefor did not exist or the defendant or other moving party was not aware of the grounds of the motion, in which case such motion may be made at any time during the trial or the pendency of any proceeding. The judicial authority in its discretion may entertain such a motion at any time." Practice Book § 41-15.

Practice Book § 41-5 provides in relevant part: "Unless otherwise provided by these rules or statute, all pretrial motions or requests shall be made not later than ten days after the first pretrial conference in the court where the case will be tried, or, with permission of the judicial authority, at such later time as the judicial authority may fix. . . ." Practice Book § 41-4, however, provides in relevant part that "[f]ailure by a party, at or within the time provided by these rules, to raise defenses or objections or to make requests that must

---

[6] The defendant, on appeal, has not raised the claim that the warrant was a statement. We therefore deem this claim abandoned. See *State* v. *Ramsundar*, 204 Conn. 4, 16, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987).

be made prior to trial shall constitute a waiver thereof, but a judicial authority, for good cause shown, may grant relief from such waiver . . . ." See *State* v. *Pickles*, 28 Conn. App. 283, 288, 610 A.2d 716 (1992) (defendant's failure to raise due process defense by timely pretrial motion waived right to raise defense later).

Practice Book § 41-5 requires that all pretrial motions in a criminal matter shall be filed not later than ten days after the first pretrial conference. The defendant's failure to make such pretrial motions within the time required constitutes a waiver unless the defendant can demonstrate good cause. See Practice Book § 41-4. Here, the pretrial conference was held on July 13, 1997, and three days later the defendant filed a motion for a speedy trial. Six months later, during jury selection, the defendant filed a motion to suppress the cuff links and Tiffany bag. The defendant acknowledges that his suppression motion was not timely, but claims that good cause to grant a hearing existed because until the day the motion was filed, his counsel did not have a copy of the search warrant, which demonstrated that the items seized had not been listed on the warrant.

The defendant appears to blame the state for failing to provide him with a copy of the search warrant. Upon written request of the defendant, the state is required "to disclose in writing the existence of and allow the defendant . . . to inspect, copy . . . any search and seizure warrants issued in connection with the investigation of the offense charged . . . ." Practice Book § 40-11 (a) (5). The defendant never asked the state to disclose the existence of the search warrant. The defendant knew that the detectives had obtained a search warrant prior to searching his apartment on January 8, 1997. The defendant's girlfriend, Whitley, was given a copy of the warrant.[7] For some reason,

_____

[7] In his brief to this court, the defendant argued that knowledge of the warrant could not be imputed to him if it were given to Whitley. This argument is disingenuous. Before trial, the defendant and Whitley were

defense counsel decided to obtain a copy of the warrant from the Darien police department on the eve of trial. The option to obtain the warrant in that manner was always available to the defendant.

At the conclusion of the trial, the defendant filed a motion for a new trial and again asserted his request for an evidentiary hearing on his motion to suppress. In denying the motions, the court articulated further its reasons for not granting the defendant an evidentiary hearing.[8] The court considered the context in which the

married, and Whitley successfully moved to quash the subpoena for her testimony at trial based on spousal immunity.

[8] In denying the defendant's motion for a new trial, the court found and concluded as follows: "On January 16th, 1998, the defendant files and argues a motion for additional peremptory challenges pursuant to [§] 54-82f of the Connecticut General Statutes, and alleged—the substance of which was that the nature of the crime, that is to say burglary, somehow invoked the sensitivity of the average juror. This motion was filed after two full days of jury selection and before the exhaustion of all peremptories by the defense. That motion was denied by Judge Tobin.

"On January 17th and 18th, these days were weekend days and the court of course was not in session. On January 19th, the court was involved in the usual busy arraignment day after a weekend. On January 20th, 1998, the court commences the jury trial of a lengthy and complex matter, which runs straight through January 26th, and for which a jury was previously stacked pursuant to another speedy trial motion . . . .

"On January 27th, a pretrial status conference was had with the state's attorney and the defense in the instant matter. The court indicated to both counsel that the veritable plethora of last-minute motions was not going to delay the trial for which the jury had been picked and stacked for over one week, and after which time the state's attorney had indicated, at least on several occasions, that state's witnesses were lined up to testify. The record should also reflect that the court adjusted its own personal schedule because of the previous statements by the state's attorney that specific key witnesses were lined up to provide testimony. Counsel for the defense indicated that the motions in question, numbering at least nine, were filed on the afternoon of Friday, January 16th, at approximately 3 p.m. . . .

"When pressed as to the time frame necessary for her motions, counsel indicated that the motion to suppress in particular would require a full evidentiary hearing involving at least a day or a day and one-half.

"Counsel, in her motion, alludes to the state's attorney's failure to obtain and turn over a copy of the affidavit and warrant giving rise to the motion. Yet, in that very same motion, that is to say, the motion for a new trial, it appears that the information requested was readily available and obtainable

motions were filed and the totality of the circumstances, concluding that the defendant's motions were dilatory. Before this court, the defendant argued that the trial court chose administrative convenience over his constitutional rights when it denied his motion for a new trial and an evidentiary hearing. On the basis of the record, we cannot conclude that the court abused its discretion in denying the defendant's request for an evidentiary hearing on his motion to suppress. The defendant has pointed to no good cause created by others as to why the hearing should have been granted on the eve of trial.

## II

The defendant's second claim is that the police violated his state and federal constitutional rights by seizing evidence from his home, specifically the gold cuff links and the Tiffany bag.[9] Although the defendant has

by simple request of the Darien [police department]. The file and the record is devoid of any reference to a [Practice Book § 40-11] discovery motion being filed until the compendium of motions heretofore referred to were filed on the afternoon of January 16th, 1998. The file and the record is devoid of any filing of a discovery motion or motions for production with specific reference to the affidavit and warrant in question. The motion to suppress must be placed in its proper context. That is to say, the proper context of (a) the above findings of fact and chronology relating thereto; (b) the ease in obtaining the information giving rise to the motion, that is to say, accessibility; (c) the defendant's motion for a speedy trial . . . the selection and stacking of the jury in question, the state's attorney's clear position as to availability and lineup of witnesses for trial. And finally . . . other serious matters pending before the court in the orderly flow of court business.

"The totality of the circumstances permits the court to conclude that the motion to suppress bootstrapped to the instant motion for a new trial was (1) dilatory, (2) displayed as a tactic to delay, (3) intended to cause an interruption of court business [and] (4) would have jeopardized the maintenance of the jury, given the court's previous advice as to the time frames involved."

[9] The defendant specifically claims violation of article first, § 7, of the constitution of Connecticut and the fourth amendment to the United States constitution.

formulated his claim in the constitutional terms of an improper police search and seizure, the defendant's real argument is that the trial court impermissibly admitted the cuff links and Tiffany bag into evidence. We are not persuaded, as this court has long held that a garden variety evidentiary claim may not be transformed into one of constitutional dimension by attaching to it a constitutional label. See *State* v. *Hanson*, 39 Conn. App. 384, 390, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995).

During direct examination, the state asked the victim to identify the cuff links and Tiffany bag, which she did. The state then offered the items into evidence, and the defendant objected, citing the same reasons given in his motion to suppress, i.e., the items were not included on the search warrant. The trial court overruled the defendant's objection.

"[O]ur review of a trial court's evidentiary ruling is limited. Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. *State* v. *Alvarez*, 216 Conn. 301, 306, 579 A.2d 515 (1990). In considering whether the trial court abused its discretion, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . *Jacobsen* v. *Jacobsen*, 177 Conn. 259, 263, 413 A.2d 854 (1979). . . . *State* v. *Nixon*, 32 Conn. App. 224, 234, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995)." (Internal quotation marks omitted.) *State* v. *Clark*, 48 Conn. App. 812, 817, 713 A.2d 834, cert. denied, 245 Conn. 921, 717 A.2d 238 (1998).

By objecting to the admission into evidence of the cuff links and Tiffany bag, the defendant attempted

to get a second bite of the "suppression apple."[10] The defendant offered no rule of evidence as to why the cuff links and Tiffany bag were not admissible. "As a general matter, evidence 'is admissible if it has a tendency to support a fact relevant to the issues if only in a slight degree.' *State* v. *Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987)." *Burns* v. *Hanson*, 249 Conn. 809, 825, 734 A.2d 964 (1999). Here, the evidence was relevant and probative of the issue, namely whether the defendant entered the victim's home with the intent to commit a crime therein. We conclude, therefore, that the court did not abuse its discretion in admitting the evidence.

## III

The defendant's third claim is that the evidence was insufficient to convict him of burglary in the third degree. Specifically, the defendant claims that the state failed to prove beyond a reasonable doubt that the defendant was the man Lopiano saw in the driveway of the victim's home[11] and that the defendant entered the victim's home unlawfully. We disagree.

"The standards by which we review claims of insufficient evidence are well established. When reviewing a sufficiency of the evidence claim, our courts apply a two-prong test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

---

[10] We concluded in part I of this opinion that by failing to raise a due process defense by way of a timely pretrial motion, the defendant waived his right to raise that defense at a later time.

[11] See footnote 2.

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . In doing so, we keep in mind that [w]e have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . .

"Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have

resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [t]his court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Thus, the issue of the identification of the defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury. . . .

"The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Sanchez*, 50 Conn. App. 145, 149–51, 718 A.2d 52, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998).

On the basis of our review of the evidence, we conclude that the jury reasonably could have found that the defendant drove his girlfriend's red automobile to Darien on January 7, 1997, parked it adjacent to a business near the victim's home and broke into the house by forcefully opening two doors. While the defendant was in the victim's home, he took a pair of cuff links and a Tiffany bag. At some time during these events, a witness saw a man in the victim's driveway who fit the description of the defendant, wearing clothes similar to those found in the defendant's home. We conclude that the evidence was sufficient for a jury to find beyond

a reasonable doubt that the defendant was guilty of having committed burglary in the third degree.

## IV

The defendant's final claim is that the court improperly admitted hearsay evidence, specifically the testimony concerning the defendant's admission to Osborne, the police detective, that, on the day of the burglary, he had used the red motor vehicle that Lopiano had seen in the driveway of the victim's home.[12] We do not agree.

We review claims that evidence was improperly admitted by an abuse of discretion standard. See *State* v. *Alvarez*, supra, 216 Conn. 306. "Among the recognized exceptions to the hearsay exclusionary rule is that for admissions of a party. *State* v. *Stepney*, 191 Conn. 233, 250, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984), citing *State* v. *DeMatteo*, 186 Conn. 696, 702, 443 A.2d 915 (1982); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.1, p. 330; C. McCormick, Evidence (3d Ed. 1984) § 262, pp. 774–75. [S]tatements made out of court by a party-opponent are universally deemed admissible when offered against him; 4 Wigmore, Evidence (Chadbourn Rev. 1972) § 1048, p. 2; so long as they are relevant and material to issues in the case. *State* v. *Stepney*, supra, 251. [T]he vast weight of authority, judicial, legislative, and scholarly, supports the admissibility without

---

[12] Direct examination of Osborne by the prosecutor was in part as follows:

"Q. What, if any, questions did you ask [the defendant]?

"A. Detective Anderson asked him a number of questions. I asked him specifically if he had the vehicle, the '94 Chevy Corsica, yesterday, if he was using the vehicle the previous day.

\* \* \*

"Q. What if anything was his response?

"A. He said yes.

"Q. What questions did you—what, if any, questions did you ask him next?

"A. I believe I didn't specifically ask him any further questions. Detective Anderson pursued his questioning after that."

restriction of any statement of a party offered against that party at trial. Id." (Internal quotation marks omitted.) *State* v. *Woodson*, 227 Conn. 1, 15, 629 A.2d 386 (1993).

The admission of Osborne's testimony concerning the defendant's use of the red motor vehicle on the date of the burglary was proper because it was an admission against the defendant. The defendant argues that the hearsay testimony should have been excluded because there was no evidence of the time the defendant used the automobile. This argument is unavailing when considered in context with the other evidence. The red automobile was seen parked near the victim's home in Darien near the time of the burglary, a man fitting the defendant's description was seen in the victim's driveway at about the same time and jewelry belonging to the victim was found in the defendant's possession. The hearsay statement was properly admitted as "an avowal or acknowledgment [by the defendant] of a fact or of circumstances from which guilt *may* be inferred . . . ." (Emphasis in original; internal quotation marks omitted.) Id. The trial court, therefore, did not abuse its discretion in admitting the evidence.

The judgment is affirmed.

In this opinion the other judges concurred.