## STATE OF CONNECTICUT *v.* MELVIN FRANK SHERMAN
### (AC 29931)

Robinson, Bear and West, Js.

Argued October 27, 2010—officially released March 22, 2011

*Roy S. Ward*, special public defender, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anthony Spinella*, assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Melvin Frank Sherman, appeals from the trial court's judgments of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103, larceny in the third degree in violation of General Statutes (Rev. to 2005) § 53a-124, carrying a pistol without a permit in violation of General Statutes § 29-35 (a), theft of a firearm in violation of General Statutes § 53a-212 and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction of all of the charges, and (2) several of the prosecutor's statements during his closing and rebuttal arguments constituted prosecutorial impropriety that deprived him of his due process right to a fair trial. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. The victim, Erica May Pagliuco, resided at 24 Pearl Street in Manchester. On August 12, 2006, the victim returned to her residence at approximately 3 p.m. and found the front door ajar. After walking through the

residence, the victim discovered that several drawers had been opened, her bedroom mattress had been shifted and a pair of electric clippers and two handguns were missing.[1] She contacted the Manchester police department (department) and reported the disturbance.

Several minutes later, Jamie Taylor, an officer with the department, responded to the call. After speaking with the victim, Taylor and another officer entered the residence to investigate. They found that a screen covering a window in the living room had been damaged and removed. They also talked to a neighbor, who reported seeing a black male in his late teens wearing a green shirt standing in front of the residence during the time frame that the incident had occurred. The officers did not recover any fingerprints or other physical evidence.

On August 14, 2006, David Ellsworth, an officer with the department, responded to a complaint alleging that an individual had been threatened by a female with a gun at 107 Spruce Street in Manchester. After locating the suspect's vehicle traveling westbound on Interstate 384, Ellsworth made a felony motor vehicle stop of the vehicle and arrested the driver, Aretha Thomas. Thomas informed Ellsworth that an unloaded handgun was located in the vehicle. Ellsworth searched the vehicle and discovered a .380 caliber handgun along with the handgun's magazine underneath the front seat. The police later found .380 caliber ammunition on Thomas during a subsequent search of her person.

Jason Wagner, an officer with the department, ran a national database search on the handgun and learned that it had been reported missing after the burglary

---

[1] According to the testimony provided at trial, the two handguns belonged to Paul Gitsis, the victim's boyfriend. Gitsis told the police that the missing guns were a nine millimeter Sig Sauer pistol and a Colt .380 caliber pistol. The Sig Sauer pistol was never recovered.

at the victim's residence. Bruce Tyler, a sergeant and firearms instructor with the department, subsequently tested the handgun. Although he had received the ammunition that the police recovered from Thomas, Tyler did not use this ammunition during his testing; instead, he used .380 caliber ammunition that was almost identical. He was able to fire six rounds from the handgun successfully.

Jeffrey Lampson, a detective with the department, was assigned to investigate the burglary at 24 Pearl Street. Lampson spoke with Thomas regarding the stolen handgun, and Thomas identified the defendant as the individual from whom she had purchased the gun. Lampson also spoke with several other individuals, including Betzaida Torres, Stacey Rubelmann and Heather Peterson, all of whom claimed to have information regarding the burglary. On the basis of Thomas' identification and the witnesses' statements, Lampson arrested the defendant in connection with the burglary at 24 Pearl Street.

The defendant was charged with burglary in the third degree in violation of § 53a-103, larceny in the third degree in violation of § 53a-124, theft of a firearm in violation of § 53a-212, carrying a pistol without a permit in violation of § 29-35 (a) and criminal possession of a firearm in violation of § 53a-217 (a) (1). A jury trial was held on January 9 and 15, 2008. On January 15, 2008, at oral argument, the defendant moved for a judgment of acquittal on all counts, which was denied by the court. On January 17, 2008, the jury returned verdicts of guilty on all counts, and the defendant was sentenced on February 28, 2008.[2] This appeal followed. Additional facts will be set forth as necessary.

---

[2] The defendant was sentenced to a total effective term of twenty years imprisonment.

I

The defendant first claims that the evidence was insufficient to support his conviction of all of the charges.[3] In reviewing a sufficiency of the evidence claim, we utilize a two part analysis. "We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Sinclair*, 197 Conn. 574, 576, 500 A.2d 539 (1985). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." *State* v. *Sivri*, 231 Conn. 115, 134, 646 A.2d 169 (1994).

In reviewing the sufficiency of the evidence, "it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Sinclair*, supra, 197 Conn. 576–77. Furthermore, "[t]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether *it* believes that the evidence . . . established

---

[3] In his brief on appeal, the defendant also makes a number of arguments addressed at the credibility of various witnesses. "In reviewing allegations of insufficient evidence, we will not . . . resolve questions of the credibility of witnesses." *State* v. *Hendrickson*, 12 Conn. App. 662, 670, 533 A.2d 894 (1987). Therefore, we do not consider these arguments in reviewing the sufficiency of the evidence.

guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original; internal quotation marks omitted). *State* v. *Boykin,* 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

"We must also acknowledge in our review of the evidence that it is the right and the duty of the jury to draw reasonable and logical inferences from the evidence. . . . Moreover, the jury may draw inferences on the basis of facts that it finds as a result of other inferences. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citations omitted; internal quotation marks omitted.) *State* v. *Haggood,* 36 Conn. App. 753, 761, 653 A.2d 216, cert. denied, 233 Conn. 904, 657 A.2d 644 (1995).

A

The defendant first claims that there was insufficient evidence to support his conviction of burglary in the third degree because the state failed to adduce sufficient evidence to establish that he had entered the victim's residence unlawfully.[4] We disagree.

---

[4] At oral argument before this court, defense counsel also argued that the defendant's conviction of burglary could not stand if this court determined that the evidence was insufficient to support his conviction of larceny. Counsel misinterprets the law. "[B]urglary and larceny are two separate and distinct crimes. . . . The fact that no actual larceny was committed does not bar a conviction of the defendant for the crime of burglary even where the crime alleged to have been intended was larceny. . . . The crime

The following additional facts are relevant to the defendant's claim. During August, 2006, Torres lived in an apartment at 2-4 Pearl Street in Manchester, which is located two buildings west of the victim's residence. At trial, Torres testified that the defendant and Yvonne Brown, the defendant's girlfriend at the time, had stayed at her apartment for a weekend in August, 2006. Although she could not remember the exact date, she did recall the defendant leaving the apartment sometime between 1 and 3 p.m. on Saturday and then returning approximately two hours later with a plastic shopping bag.

According to Torres, when the defendant returned, he and Brown went into the bathroom with the bag. After ten to twenty minutes had elapsed and the couple had not returned, Torres decided to check on them. Upon looking into the bathroom, Torres noticed Brown wearing an assortment of rings, bracelets, watches and necklaces that she had not been wearing previously. The couple then attempted to hide once more, this time moving into the bedroom, but Torres was able to observe the couple as they continued sorting through the contents of the bag, which included various items of jewelry and a pair of electric hair clippers. Shortly thereafter, Torres looked out of the apartment window and saw the police responding to a call at a nearby location.

While at Torres' apartment, the defendant gave Torres several pieces of jewelry, including a ring. Torres testified that she sold the ring to Connecticut Valley

---

proscribed by the provisions of . . . § 53a-103, is committed completely once a person enters or remains unlawfully in a building with the *intent* to commit a crime therein." (Citations omitted; emphasis added.) *State* v. *Patterson*, 35 Conn. App. 405, 412, 646 A.2d 258, cert. denied, 231 Conn. 930, 649 A.2d 254 (1994). Therefore, the state need not prove that a completed crime occurred to convict a defendant of burglary.

Coin, a pawnshop located in Manchester, approximately three or four days later. The defendant also set aside a small portion of jewelry, and then he contacted Thomas and Peterson to see if either would be interested in purchasing some of the jewelry or exchanging it for drugs.

Thomas testified that one or two days before she was arrested, she had met with the defendant twice, including once at Rubelmann's house, and purchased jewelry from him on both occasions. Thomas stated that she had given some of the jewelry to Peterson, who then sold the items at a pawnshop. Thomas also testified that she had inquired about purchasing a weapon from the defendant during both of the meetings. On August 13, 2006, the defendant informed Thomas that he had procured a gun, and the two agreed to meet at Peterson's house. Outside of Peterson's house, Thomas exchanged $100 for the handgun that subsequently was found in her car on August 14, 2006.

Rubelmann testified that the defendant came to her house in mid-August, 2006. While he was there, the defendant attempted to sell to Rubelmann and her boyfriend an assortment of jewelry and three handguns, including the .380 caliber handgun that he eventually sold to Thomas. Rubelmann further testified that the defendant said he had stolen the jewelry and guns.

During his investigation, Lampson was able to recover a number of items that had been taken from the victim's residence. He recovered the ring that Torres had sold to Connecticut Valley Coin along with a receipt showing that Torres had sold it on August 16, 2006. The victim subsequently identified the ring as her high school graduation ring that had been missing since the burglary. Lampson also recovered an assortment of jewelry from Torres' apartment and Thomas' car, items that the victim identified as her belongings that had

been missing since the date of the burglary. Finally, Lampson recovered four pawn slips that contained pictures of jewelry that Peterson had sold to a pawnshop, and the victim identified one or two pieces of jewelry in the slips as her jewelry.

To convict a defendant of burglary in the third degree, the state is required to prove beyond a reasonable doubt that the defendant "enter[ed] or remain[ed] unlawfully in a building with intent to commit a crime therein." General Statutes § 53a-103 (a). "A person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so." General Statutes § 53a-100 (b).

The defendant claims that the state did not adduce sufficient evidence that he entered the victim's residence unlawfully because it did not introduce any physical evidence or produce any witness testimony that placed the defendant inside the residence or walking away from it. The state, on the other hand, argues that it introduced sufficient evidence because the jury reasonably could have inferred unlawful entry from the defendant's close proximity to the victim's residence and his possession of items missing from the residence after the burglary. We agree with the state.

As we stated previously, the state may rely on either direct *or* circumstantial evidence to establish that a defendant entered upon a premises unlawfully. See *State* v. *Spikes*, 111 Conn. App. 543, 554, 961 A.2d 426 (2008), cert. denied, 291 Conn. 901, 967 A.2d 114, cert. denied, 558 U.S. 898, 130 S. Ct. 249, 175 L. Ed. 2d 170 (2009). "[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." *State* v. *Sinclair*, supra, 197 Conn. 576. Therefore, although

the state had the burden of proving beyond a reasonable doubt that the defendant entered the victim's residence unlawfully, it was not required to introduce physical evidence or eyewitness testimony to satisfy this burden.

Furthermore, this court has rejected similar arguments advanced by defendants in previous cases. For instance, in *State* v. *Correa*, 57 Conn. App. 98, 108–11, 748 A.2d 307, cert. denied, 253 Conn. 908, 753 A.2d 941 (2000), the defendant appealed from his conviction of burglary in the third degree, claiming that the state had presented insufficient evidence that he had entered the victim's residence. At trial, the state had presented evidence that tended to establish that (1) a car belonging to the defendant's girlfriend was parked in a lot adjacent to the victim's house prior to the burglary; (2) the defendant had used the car on the day of the burglary; (3) the defendant matched a witness' description of an individual observed standing in the victim's driveway about the time of the burglary; and (4) on the day after the burglary, some of the victim's missing jewelry was found in the apartment where the defendant was staying. Id., 100–101. On the cumulative basis of this evidence, this court concluded that the state had presented sufficient evidence of unlawful entry and affirmed the defendant's conviction. Id., 110–11. Similarly, in *State* v. *Spikes*, supra, 111 Conn. App. 554, the defendant claimed that the evidence was insufficient to support his conviction of burglary in the third degree. In rejecting his claim, this court concluded that "on the basis of evidence that the defendant was seen at or near [the location of the burglary] at about the time of the burglary and that he had on his person at the time he was arrested [four days after the burglary] some of the jewelry stolen from the premises . . . the jury reasonably could have found that he illegally entered [the location of the burglary] . . . and stole [the] jewelry." Id., 555–56. As *Correa* and *Spikes* demonstrate, in

sustaining convictions based entirely on circumstantial evidence, this court has relied on evidence that the defendant was at or near the residence at about the time of the burglary and that the defendant was in possession of items stolen from the residence thereafter.[5]

In the present case, construing the evidence in the light most favorable to sustaining the jury verdict, we conclude that the jury reasonably could have found that the defendant entered the victim's residence unlawfully. First, the evidence established that the defendant stayed at Torres' apartment for a weekend in August, 2006, he left the apartment on Saturday between 1 and 3 p.m. and he returned approximately two hours later. Although Torres could not recall the exact date of the August, 2006 weekend, the jury could have inferred, on the basis of her testimony and the pawnshop receipt from Connecticut Valley Coin dated August 16, 2006, that it was the weekend of August 11 to 13, 2006. Furthermore, on the basis of this same evidence, the jury could have inferred that the Saturday referred to by Torres was Saturday, August 12, 2006. Additionally, on

[5] We do note one distinction between *Spikes* and *Correa* and the present case. In both *Spikes* and *Correa*, the state presented evidence from which the jury reasonably could have inferred that the defendant was the individual witnesses had observed outside of the victim's residence at about the time of the burglary. *State* v. *Spikes*, supra, 111 Conn. App. 555; *State* v. *Correa*, supra, 57 Conn. App. 110. In the present case, the state did not adduce such evidence. The state's evidence consisted of only a general description of a black male wearing a green shirt. As this court previously has recognized, without any further description or testimony, "[t]his general description alone, totally devoid of any additional identifying characteristics or traits, did not provide sufficient information for the jury reasonably to have concluded that the defendant was the individual observed . . . ." *State* v. *Billie*, 123 Conn. App. 690, 698, 2 A.3d 1034 (2010). Notwithstanding this distinction, on the basis of Rubelmann's testimony that the defendant stated that he had stolen the jewelry and guns he was attempting to sell, along with the other cumulative evidence presented by the state, we do not believe that the distinction is significant enough to require us to depart from the reasoning of *Spikes* and *Correa*.

the basis of the times that Torres testified that the defendant left and returned to the apartment, the jury could have inferred that the defendant left the apartment before the burglary and returned afterward. Considered altogether, along with the proximity of the apartment to the victim's residence, the jury reasonably could have concluded that the defendant was near the victim's residence around the time of the burglary.

Additionally, the evidence established that the defendant returned to Torres' apartment with a bag of jewelry, he gave Torres the victim's high school graduation ring, and he set aside an assortment of jewelry in Torres' apartment, some of which the victim identified as her missing jewelry. Considering this evidence, together with the earlier inference that the defendant returned to Torres' apartment after the burglary, the jury reasonably could have found that after the burglary the defendant was in possession of the victim's graduation ring and the assortment of jewelry Lampson later recovered from Torres' apartment. Furthermore, the evidence established that the defendant sold jewelry and a handgun to Thomas, jewelry and a handgun were found in Thomas' car on August 14, 2006, and the jewelry and handgun found in Thomas' car were identified as items stolen from the victim's residence. On the basis of the testimony provided by Brown, Thomas and Torres, the jury reasonably could have found that the defendant sold the jewelry to Thomas on August 12, 2006, and sold the gun to her on August 13, 2006. Furthermore, although Thomas did not identify the jewelry found in her car as the items sold to her by the defendant, we conclude that on the basis of the cumulative testimony provided, the jury reasonably could have found that these were the items that the defendant sold to her on August 12, 2006. Considered altogether, the jury reasonably could have found that after the burglary occurred,

the defendant was in possession of the jewelry and handgun later found in Thomas' car.

On the basis of this evidence and the inferences reasonably drawn therefrom, along with Rubelmann's testimony that the defendant stated that he had stolen jewelry and handguns, the jury could have found that the defendant entered the victim's residence unlawfully. The jury could have reasoned that the defendant left Torres' apartment on August 12, 2006, walked to the victim's residence located two buildings away and broke into the home by forcefully removing a screen in a living room window. While in the victim's home, the defendant took, among other items, an assortment of jewelry and a .380 caliber handgun. The defendant then exited the front door of the residence and returned to Torres' apartment with these items. Thereafter, he gave some of the jewelry to Torres, set some of the jewelry aside and sold some of the jewelry along with the handgun to Thomas. Accordingly, we conclude that there was sufficient evidence to support the defendant's conviction of burglary in the third degree.

B

The defendant also claims that there was insufficient evidence to support his conviction of larceny in the third degree. To convict a defendant of larceny in the third degree, the state has to establish beyond a reasonable doubt that the defendant committed a larceny and that the value of the property exceeded $1000. See General Statutes (Rev. to 2005) § 53a-124 (a). The defendant argues that the state failed to adduce sufficient evidence to establish that (1) he committed a larceny or (2) the value of the jewelry exceeded $1000. We disagree.

The following additional facts are relevant to the defendant's claim. At trial, the victim identified twelve pieces of jewelry, including five earrings, two watches, two bracelets, two rings and one necklace, as items

that had been missing from her residence since the date of the burglary. All of the identified items were admitted as full exhibits and displayed to the jury. The victim also testified that the value of all items of jewelry taken from her residence totaled approximately $2000.

The defendant first argues that the state failed to adduce sufficient evidence that he committed a larceny because the evidence did not support a finding that he possessed stolen property. We conclude that the defendant's argument is based on a flawed reading of General Statutes § 53a-119 and, furthermore, that the evidence was sufficient to establish that the defendant committed a larceny under the broad definition set forth in § 53a-119.

Section 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." "Connecticut courts have interpreted the essential elements of larceny as (1) the wrongful taking or carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of [the property] permanently; and (3) the lack of consent of the owner." (Internal quotation marks omitted.) *State* v. *Flowers*, 69 Conn. App. 57, 69, 797 A.2d 1122, cert. denied, 260 Conn. 929, 798 A.2d 972 (2002).

In addition to the broad definition of larceny, § 53a-119 also "enumerates eighteen separate examples that constitute larceny, including . . . possession of stolen goods. See General Statutes § 53a-119 (8) ('[a] person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to

restore it to the owner')." *State* v. *Edwards*, 100 Conn. App. 565, 594, 918 A.2d 1008, cert. denied, 282 Conn. 928, 929, 926 A.2d 666, 667 (2007). These enumerated examples, however, "are *not* meant to limit the broad definition set out in the first paragraph of [§ 53a-119], but are meant as certain specific ways of committing the offense." (Emphasis added; internal quotation marks omitted.) Id., 595. Therefore, receiving stolen property is but one theory the state may elect to pursue to establish that a defendant has committed a larceny; the state nevertheless remains free to introduce evidence that establishes larceny under the broad definition of larceny.

Construing the evidence in the light most favorable to sustaining the jury verdict, we conclude that the state introduced sufficient evidence to establish that the defendant committed a larceny of the twelve items of jewelry identified by the victim and the .380 caliber handgun recovered from Thomas' car. In part I A of this opinion, we considered the evidence and concluded that the jury reasonably could have found that the defendant entered the victim's residence unlawfully, he removed items of jewelry and a .380 caliber gun, and he later sold some of the jewelry and the .380 caliber handgun. On the basis of this same evidence, the jury reasonably could have found that the defendant wrongfully took the victim's jewelry and the .380 caliber handgun with the intent to deprive the owner of such property permanently.

The defendant additionally argues that the state failed to adduce sufficient evidence that the value of the stolen jewelry exceeded $1000 because the state did not support the victim's testimony regarding the approximate value of the jewelry with any factual underpinning, such as sales prices, appraisals, purchase prices or any other evidence. In effect, the defendant argues that, in the absence of a factual foundation that establishes the

type of value and the relevant time frame, a victim's testimony regarding the value of stolen property is not competent evidence. We disagree.

General Statutes § 53a-121 (a) (1) provides in relevant part that "value means the market value of the property . . . at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property . . . within a reasonable time after the crime." "The determination of value is a question for the trier of fact." *State* v. *Collette*, 199 Conn. 308, 314, 507 A.2d 99 (1986).

Under the law in Connecticut, it is well settled that an owner may testify as to the value of his or her property. *State* v. *Davis*, 3 Conn. App. 359, 367, 488 A.2d 837 (1985). "An owner may estimate the worth of his or her property, and the jury must consider the weight of the owner's testimony. . . . The state does not need to prove the value of property with exactitude. . . . The state is required only to lay a foundation which will enable the trier [of fact] to make a fair and reasonable estimate." (Citations omitted; internal quotation marks omitted.) *State* v. *Spikes*, supra, 111 Conn. App. 551. "Whether an owner's testimony as to the . . . value provides sufficient information to support a jury verdict depends on the circumstances of each case." *State* v. *Baker*, 182 Conn. 52, 63, 437 A.2d 843 (1980).

The defendant cites *State* v. *Browne*, 84 Conn. App. 351, 388–89, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004), in support of his general contention that any testimony provided by the owner regarding the value of his or her property is incompetent unless the state also provides some sort of factual foundation in support of the testimony. After a thorough review of *Browne*, we conclude that this case does not support the defendant's contention. Furthermore, we can find

no law that imposes on the state the requirements advanced by the defendant.

After reviewing the evidence in the light most favorable to sustaining the jury's verdict, we conclude that the jury could have found beyond a reasonable doubt that the value of the stolen jewelry exceeded $1000. The jury heard testimony from the victim that the estimated value of the stolen jewelry exceeded $2000. The state also introduced twelve items of jewelry into evidence that the victim had identified as items stolen from her residence on August 12, 2006. The testimony combined with the twelve items of jewelry provided the jury with an evidentiary foundation on which to "make a fair and reasonable estimate" regarding the jewelry's value. (Internal quotation marks omitted.) *State* v. *Spikes*, supra, 111 Conn. App. 551. Accordingly, we conclude that there was sufficient evidence to support the defendant's conviction of larceny in the third degree.

C

The defendant further claims that the evidence was insufficient to support his conviction of carrying a pistol without a permit because the state failed to adduce sufficient evidence to establish that he possessed a pistol. We disagree.

Pursuant to § 29-35 (a): "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ." General Statutes § 29-35 (a). The term pistol, as used in § 29-35 (a), means "any firearm having a barrel less than twelve inches in length." General Statutes § 29-27.

As we discussed in part I A of this opinion, Rubelmann testified that the defendant came to her house in mid-August, 2006, with three guns, including a .380

caliber handgun. Thomas also testified that the defendant had sold her a .380 caliber handgun outside of Peterson's house on August 13, 2006. Rubelmann and Thomas both identified the .380 caliber handgun introduced into evidence as the same handgun that the defendant had in his possession. On the basis of this evidence, there was ample evidence from which the jury reasonably could have concluded that the defendant possessed a pistol. Accordingly, we conclude that there was sufficient evidence to support the defendant's conviction of carrying a pistol without a permit.

D

The defendant next claims that the evidence was insufficient to support his conviction of theft of a firearm because the state failed to adduce evidence sufficient to establish that the .380 caliber handgun was operable.[6] In essence, the defendant claims that the state did not prove beyond a reasonable doubt that the handgun was a firearm within the meaning of General Statutes § 53a-3 (19). We disagree.

To convict a defendant of stealing a firearm, the state must prove that the stolen instrumentality is a firearm. General Statutes § 53a-212. A firearm is defined as "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded *from which a shot may be discharged* . . . ." (Emphasis added.) General Statutes § 53a-3 (19). "Whether a *firearm* is one from which a shot may be discharged can be inferred from all of the facts . . . ." (Emphasis added.) *State* v. *Carpenter*, 19 Conn. App. 48, 59, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989).

---

[6] The defendant also claims that the state did not adduce sufficient evidence to establish that he wrongfully took the handgun. Having already concluded in part I B of this opinion that the jury reasonably could have found that the defendant wrongfully took the handgun, we do not reconsider that claim here.

The defendant does not contest that the handgun functioned properly when Officer Tyler fired six test shots from it with substituted ammunition. He claims instead that this evidence was insufficient because Tyler did not use the ammunition that the police recovered from Thomas during his testing and, therefore, it was not unreasonable to surmise that the original bullets were defective and incapable of being discharged. The defendant's argument, however, misconstrues what § 53a-3 (19) requires the state to prove. To establish that the .380 caliber handgun was a firearm, the state had to prove that the *handgun* was a "weapon . . . from which a shot may be discharged . . . ." General Statutes § 53a-3 (19). The statute does not require the state to establish that the *ammunition* recovered with the handgun was capable of being discharged from the instrumentality with which it was recovered. Thus, even assuming that the ammunition that the police recovered was defective, this would establish only that the *ammunition* was defective. It would provide no relevant evidence on the key issue before the jury, which was whether the *handgun* was a "weapon . . . from which a shot may be discharged . . . ." Therefore, the fact that Tyler used different ammunition is irrelevant in determining whether the state established that the handgun was a "weapon . . . from which a shot may be discharged . . . ." Accordingly, we conclude that there was sufficient evidence to support the defendant's conviction of theft of a firearm.

E

Finally, the defendant claims that there was insufficient evidence to support his conviction of criminal possession of a firearm. Section 53a-217 (a) (1) provides in relevant part that "[a] person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and . . . has been convicted of a felony . . . ." As with the crime of theft of a firearm,

operability is an essential element of criminal posses-
sion of a firearm. See, e.g., *State* v. *Miles*, 97 Conn. App.
236, 240–41, 903 A.2d 675 (2006). The defendant argues
that the evidence failed to establish that he possessed
the .380 caliber handgun and that it was operable. As
we discussed previously, however, on the basis of the
evidence presented at trial, the jury reasonably could
have found that the defendant possessed the .380 cali-
ber handgun and that it was operable. Accordingly, we
conclude that there was sufficient evidence to support
the defendant's conviction of criminal possession of
a firearm.

## II

The defendant also claims that several of the prosecu-
tor's statements during his closing and rebuttal argu-
ments constituted prosecutorial impropriety that
deprived him of his due process right to a fair trial.[7]
We disagree.[8]

[7] The defendant also claims that the prosecutor's statements violated his
right to remain silent pursuant to the fifth amendment to the United States
constitution. Because the defendant does not cite any legal authority or
provide any analysis of this claim, we decline to afford it consideration.
See, e.g., *O'Connell, Flaherty & Attmore, LLC* v. *Doody*, 124 Conn. App. 1,
8, 3 A.3d 969 (2010) ("[W]e are not required to review issues that have been
improperly presented to this court through an inadequate brief. . . . Analy-
sis, rather than mere abstract assertion, is required in order to avoid abandon-
ing an issue by failure to brief the issue properly." [Internal quotation
marks omitted.]).

[8] The defendant requests that we exercise our supervisory authority to
reverse his convictions and order a new trial due to prosecutorial impropri-
ety. "[An appellate court] may invoke [its] inherent supervisory authority
in cases in which prosecutorial [impropriety] is not so egregious as to
implicate the defendant's . . . right to a fair trial . . . [but] when the prose-
cutor deliberately engages in conduct that he or she knows, or ought to
know, is improper. . . . [S]uch a sanction generally is appropriate . . .
only when the [prosecutor's] conduct is so offensive to the sound administra-
tion of justice that only a new trial can effectively prevent such assaults on
the integrity of the tribunal. . . . Accordingly, in cases in which prosecu-
torial [impropriety] does not rise to the level of a constitutional violation,
we will exercise our supervisory authority to reverse an otherwise lawful
conviction only when the drastic remedy of a new trial is clearly necessary
to deter the alleged prosecutorial [impropriety] in the future." (Citations

The defendant concedes that his claim is unpreserved, and he now seeks review pursuant to *State* v. *Stevenson,* 269 Conn. 563, 849 A.2d 626 (2004). The decision in *Stevenson* clarified that when a defendant raises an unpreserved claim of prosecutorial impropriety, "it is unnecessary for the defendant to seek to prevail under the specific requirements of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. The reason for this is that the touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in *State* v. *Williams,* 204 Conn. 523, 540, 529 A.2d 653 (1987)." *State* v. *Stevenson,* supra, 572–73; see *State* v. *Gould,* 290 Conn. 70, 77, 961 A.2d 975 (2009) ("a claim of prosecutorial impropriety, even in the absence of an objection, has constitutional implications and requires a due process analysis under *State* v. *Williams,* [supra, 535–40]"). Therefore, notwithstanding the defendant's failure to preserve this claim, we may still consider it.

The applicable standard of review for unpreserved claims of prosecutorial impropriety is well established. *State* v. *Tomas D.,* 296 Conn. 476, 511, 995 A.2d 583 (2010). "In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety

omitted; internal quotation marks omitted.) *State* v. *James G.,* 268 Conn. 382, 422–23, 844 A.2d 810 (2004). In the present case, because we conclude that none of the prosecutor's statements were improper, we decline the defendant's request.

is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry. . . .

"Prosecutorial impropriety can occur . . . in the course of closing or rebuttal argument. . . . In the event that such impropriety does occur, it warrants the remedy of a new trial only when the defendant can show that the impropriety was so egregious that it served to deny him his constitutional right to a fair trial. . . . To prove prosecutorial [impropriety], the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the [impropriety] so infected the trial with unfairness as to make the conviction a denial of due process. . . . In weighing the significance of an instance of prosecutorial impropriety, a reviewing court must consider the entire context of the trial, and [t]he question of whether the defendant has been prejudiced by prosecutorial [impropriety] . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Citations omitted; internal quotation marks omitted.) *State* v. *Long*, 293 Conn. 31, 36–37, 975 A.2d 660 (2009).

The defendant's claims of prosecutorial impropriety may be divided into two categories. The defendant argues that the prosecutor (1) commented on or suggested that the jurors draw inferences from facts that were not in evidence and (2) improperly appealed to the emotions of the jurors. We address each category in turn.

A

We first address the defendant's claim that the prosecutor commented on or suggested that the jurors draw

inferences from facts that were not in evidence. In reviewing the defendant's claim, we are mindful that "[w]hen making closing arguments to the jury . . . [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 237, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). "While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence . . . ." *State* v. *Ferrone*, 96 Conn. 160, 169, 113 A. 452 (1921). "Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Colon*, supra, 237; cf. *State* v. *McKiernan*, 78 Conn. App. 182, 201, 826 A.2d 1210 ("a prosecutor must not comment on evidence that is not part of the record, nor is he to comment unfairly on the evidence adduced at trial so as to mislead the jury"), cert. denied, 266 Conn. 902, 832 A.2d 66 (2003).

In his brief, the defendant has identified eight statements made by the prosecutor during his closing and rebuttal arguments that he claims either improperly commented on facts that were not in evidence or asked the jury to draw an inference from facts that were not in evidence. After an extensive review of the record, we conclude that all of the statements either were supported by the evidence or simply asked the jury to draw reasonable inferences from the evidence. Therefore, we conclude that the prosecutor's statements were not improper.

B

We next consider the defendant's claim that the prosecutor improperly appealed to the emotions of the jurors during his closing and rebuttal arguments. As our Supreme Court has recognized: "A prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the jury's attention from [its] duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, supra, 204 Conn. 545–46.

The defendant argues that the following statement improperly appealed to the emotions of the jury because it had no basis in fact and was not a proper summation of established facts: "Well, the evidence is clear, there were two guns stolen. One was given to . . . Thomas. We still have another one out there trying to be sold."

After a careful review of the record, we conclude that the statement was not improper. Despite the defendant's argument to the contrary, the prosecutor's comments were supported generally by evidence introduced at trial and the inferences reasonably drawn therefrom. The testimony of Officer Taylor revealed that the victim's boyfriend had reported two guns missing from the residence after the August 12, 2006 burglary. Thomas' testimony, along with that of Officer Ellsworth, revealed that on August 14, 2006, Thomas had been found in possession of one of the handguns taken during the burglary. Furthermore, Thomas testified that the day after he sold her the .380 caliber handgun, the defendant sold a second gun to another individual, which was

never recovered. Although the state should not ask the jury to draw inferences that are not supported by the evidence, we cannot say that the prosecutor's comments in the present case "impermissibly strayed beyond the evidence or the inferences the jury reasonably could have drawn from it." *State* v. *Kendall*, 123 Conn. App. 625, 636, 2 A.3d 990, cert. denied, 299 Conn. 902, 10 A.3d 521 (2010).

The defendant also argues that the prosecutor sought to appeal to the emotions of the jurors by impermissibly using his criminal record as character and propensity evidence. The defendant refers to the following portion of the prosecutor's closing argument in support of his claim:

"You viewed several witnesses, lay witnesses, not police officers in this case. Most, if not all of the witnesses who testified before you, had some baggage accompanying them to the witness stand, meaning their prior history or some involvement in these criminal cases. And I want you to keep in mind the circumstances of this case and the circumstances in many crimes. We're talking about a situation where someone has burglarized the house, took off with thousands of dollars worth of jewelry and guns. This is not the type of circumstances that most of us are involved in. Most of us have never had the experience of being approached by someone trying to unload $2000 worth of stolen jewelry or two stolen weapons. This is the type of people this does happen to, the type of people that you've seen over the last couple of days. Those are the type of people who were involved in either buying stolen jewelry or buying stolen guns. So, I want you to take that into consideration when you judge their credibility and when you look at this case as a whole."

We conclude that the defendant's contention is not a reasonable reading of the prosecutor's remarks. At

no time throughout the remarks did the prosecutor reference the defendant, his criminal record or his character. A plain reading of these remarks reveals that they were aimed at addressing credibility concerns that the jurors may have developed regarding certain witnesses for the state. As we have recognized: "It is not improper for a prosecutor to ask the jury to draw inferences and to exercise common sense. . . . A prosecutor may urge the jury to find for stated reasons that a witness was truthful or untruthful. . . . A prosecutor may also remark on the motives that a witness may have to lie, or not to lie, as the case may be. . . . The distinguishing characteristic of impropriety in this circumstance is whether the prosecutor asks the jury to believe the testimony of the state's witnesses because the state thinks it is true, on the one hand, or whether the prosecutor asks the jury to believe it because logic reasonably thus dictates." (Citations omitted; internal quotation marks omitted.) *State* v. *Felix*, 111 Conn. App. 801, 811–12, 961 A.2d 458 (2008). The defendant does not contend that the prosecutor overstepped the permissible boundaries in the present case, and we have no reason to conclude otherwise.

Recognizing the weakness of his argument, the defendant attempts to bolster it by claiming that the previously mentioned remarks should be considered in conjunction with other remarks made by the prosecutor throughout his closing and rebuttal arguments, in which he states that "these people" and the defendant engaged in various activities, such as smoking crack. These other activities referred to by the prosecutor, however, are supported by testimony provided at trial. Therefore, because a prosecutor may generally use any evidence properly admitted at trial during his closing argument; *State* v. *Camacho*, 282 Conn. 328, 377, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007); we are unable to discern how the prosecutor's

reference to testimony adduced at trial improperly commented on the defendant's character or propensity to commit crimes. Accordingly, we conclude that the prosecutor's remarks were not improper.

The judgments are affirmed.

In this opinion the other judges concurred.