STATE OF CONNECTICUT *v.* KEITH SCHECK
(AC 27595)

McLachlan, Gruendel and Dupont, Js.

---

Argued November 14, 2007—officially released February 26, 2008

*Jodi Zils Gagne*, for the appellant (defendant).

*Tami Stanford*, certified legal intern, with whom were *Bruce R. Lockwood*, assistant state's attorney, and, on the brief, *John A. Connelly*, state's attorney, and *John J. Davenport*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Keith Scheck, appeals from the judgment of conviction, rendered after a trial to the jury, of the crimes of attempt to commit assault in the first degree as an accessory in violation of General Statutes §§ 53a-49 (a) (2), 53a-59 (a) (1) and 53a-8, and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-59 (a) (1). The defendant claims that the trial court should have (1) granted his motions for a judgment of acquittal and (2) denied the state's motion in limine to preclude certain testimony. We affirm the judgment of conviction.

The following factual and procedural history is relevant. The defendant was arrested for his participation in the attempted shooting of the victim, Jeffrey Wilde, by his accomplice, Kenneth Wells. Prior to this shooting, Wilde had been arrested on charges of unlawful restraint in the second degree and assault in the third degree involving Wells' girlfriend, Mary Homa. These charges against Wilde were pending at the time of the defendant's trial. Before trial, the state filed a motion in limine to preclude defense counsel from inquiring into the factual allegations of any alleged assault by Wilde against Homa. The state's motion acknowledged that the defense could inquire about the existence of the pending case against Wilde. The motion was granted, prohibiting any inquiry into the details of that alleged assault, particularly Homa's claims that they were of

a sexual nature. Other facts will be supplied in the discussion of the defendant's two claims.

## I

The defendant claims that insufficient evidence supported his conviction, arguing specifically that he did not have the requisite intent to attempt to commit an assault. He made two motions for a judgment of acquittal, one after the jury's verdict and the other at the time of his sentencing. The court noted that intent was a question of fact for the jury and that the jury had found beyond a reasonable doubt that the state had proven its case. Accordingly, the court denied both of the defendant's motions. We agree with the ruling of the court.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [fact finder] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Silva*, 93 Conn. App. 349, 351–52, 889 A.2d 834, cert. granted on other grounds, 277 Conn. 931, 896 A.2d 103 (2006).

"The crime of attempted assault requires proof of intent to cause serious physical injury. General Statutes 53a-59 (a) (1)." (Internal quotation marks omitted.) *State* v. *Walton*, 34 Conn. App. 223, 231, 641 A.2d 391, cert. denied, 230 Conn. 902, 644 A.2d 916 (1994). "[C]onspiracy is a specific intent crime. Intent is divided into two parts: (1) the intent to agree to conspire; and (2) the intent to commit the offense that is the object of the conspiracy. . . . Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and

from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . In a conspiracy prosecution, when determining both a defendant's specific intent to agree and his specific intent that the criminal acts be performed, the jury may rely on reasonable inferences from facts in the evidence and may develop a chain of inferences, each link of which may depend for its validity on the validity of the prior link in the chain." (Internal quotation marks omitted.) *State* v. *Williams*, 94 Conn. App. 424, 433, 892 A.2d 990, cert. denied, 279 Conn. 901, 901 A.2d 1224 (2006).

"The issue of the intent of the defendant is one of fact to be resolved by the jury. . . . It is the right and duty of the jurors to draw all reasonable and logical inferences from the facts as they find them to exist. . . . The jury has the further duty of determining the credibility of the witnesses and weighing the effects of conflicting evidence." (Internal quotation marks omitted.) *State* v. *Rogers*, 38 Conn. App. 777, 791, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996).

On the basis of the evidence presented at trial and the inferences reasonably drawn therefrom, the jury could have found certain facts. Wells and the defendant had been good friends for twenty years. On the night of the alleged crimes, Wells picked up the defendant at the Naugatuck train station. They went to at least two bars and drank beer for approximately seven hours, eventually ending up at Wells' residence. They discussed the fact that criminal charges were pending against Wilde, arising out of the alleged assault involving Wells' girlfriend, Homa, who was also the mother of Wells' son.

The defendant knew that the discussion regarding Wilde's alleged assault of Homa upset Wells. On February 10, 2003, at approximately 1:30 a.m., Wells took his shotgun and went to his car, where the defendant and Homa joined him. The defendant saw Wells carry the shotgun into the car. Wells drove the defendant and Homa from his residence to Wilde's apartment. Wells and the defendant got out of the car and walked up to the porch of Wilde's second floor apartment. The defendant saw Wells carry the shotgun as they approached the porch. With Wells standing behind him holding the shotgun, the defendant knocked on the door and moved alongside Wells.

Upon hearing knocking at his door, Wilde woke up, went to the door, heard two separate and distinct male voices talking and saw two silhouettes at his door. He turned away from the door intending to get his sweatpants. After waiting approximately one minute, Wells fired the first shotgun blast into the apartment door. The defendant then ran to the car, and he and Homa drove off leaving Wells at the scene. The gunshot missed Wilde by approximately one foot. He immediately went to his living room to telephone 911. Wells then fired a second gunshot from the bottom of the porch. The second gunshot also missed Wilde, who remained in his living room talking to the 911 dispatcher.

On the basis of the evidence, the jury reasonably could have found that the defendant intended to aid Wells in the assault of Wilde and cause serious physical injury to him. Not only was the defendant aware that Wells harbored ill feelings toward Wilde, but he knew (1) that Wells intended to go to Wilde's residence that morning, (2) that Wells was in an enraged, intoxicated state and (3) that he was armed with a shotgun. Nevertheless, the defendant joined Wells, who was armed, on Wilde's porch, knocked on the door so that Wilde

would approach it and stood aside as Wells fired through it. Thus, sufficient evidence existed to support the defendant's conviction. Although the defendant testified that he traveled with his friend to mediate the situation, the jury apparently did not find his testimony credible. Sufficient evidence was presented to the jury to support its finding of guilty of both crimes with which the defendant had been charged.[1]

## II

The defendant claims that the court acted improperly in granting the state's motion in limine to preclude the details of Homa's uncharged accusations of sexual misconduct against Wilde.[2] We disagree.

Prior to trial, the state filed a motion in limine "to have the court preclude any questions by defense counsel which seek to elicit an answer from any witness concerning the factual allegations in . . . a currently pending criminal file [against Wilde]." In the motion, the state acknowledged that questions regarding the existence of a pending case against Wilde were appropriate inquiry for the defense when Wilde testified because it would be relevant to Wilde's motive and interest in the outcome of the case against the defendant. The state argued that "the factual circumstances of the incident . . . should not [have been] the subject of inquiry by the defense since they [did] not implicate

[1] The defendant argues that he should have been charged with the crime of reckless endangerment, rather than the crimes involving assault in the first degree. We are not concerned with the charges that the state could have brought but rather whether the offenses as charged supported the verdict. Furthermore, the defendant did not seek an instruction to the jury on lesser included offenses.

[2] The state claims that this issue is not reviewable on appeal because it was not preserved and is not constitutional, thereby precluding a review pursuant to State v. Golding, 213 Conn. 233, 567 A.2d 823 (1989). We conclude that it was sufficiently preserved for review. See State v. Shabazz, 246 Conn. 746, 752–53, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999).

the veracity of the witness, Jeffrey Wilde." (Internal quotation marks omitted.)

Outside the presence of the jury, the defendant argued that Homa's allegations of uncharged sexual misconduct against Wilde were relevant to show that Wells had a motive to assault Wilde and to show that the defendant had no such motive. In response, the state argued that Wilde was not charged with sexual assault but rather unlawful restraint and assault. According to the state, evidence of the uncharged misconduct was irrelevant and more prejudicial than probative. The court granted the state's motion in limine, ruling that the defense could inquire about the complaint Homa filed and the names of the two criminal charges, specifically unlawful restraint in the second degree and assault in the third degree, but could not inquire about the details of the allegations.

"[T]he constitutional right to present a defense does not include the right to introduce any and all evidence claimed to support it. . . . The trial court retains the power to rule on the admissibility of evidence pursuant to traditional evidentiary standards." (Internal quotation marks omitted.) *State* v. *Stevenson,* 53 Conn. App. 551, 565 n.12, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999). The question of admissibility of proffered evidence is usually one of evidentiary, but not constitutional, dimension. See *State* v. *Shabazz,* 246 Conn. 746, 753 n.4, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999).

We review the defendant's evidentiary claim by employing the abuse of discretion standard. "The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of

discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *William C.*, 103 Conn. App. 508, 517, 930 A.2d 753, cert. denied, 284 Conn. 928, 934 A.2d 244 (2007). Our "review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Landry* v. *Spitz*, 102 Conn. App. 34, 59, 925 A.2d 334 (2007).

"[E]vidence is relevant if it has a tendency to establish the existence of a material fact. . . . Relevant evidence is evidence that has a logical tendency to aid the trier [of fact] in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . .

"Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value."[3] (Internal quotation marks omitted.) *State* v. *Rosa*, 104 Conn. App. 374, 378, 933 A.2d 731 (2007).

"Connecticut Code of Evidence § 4-5 (b) provides: Evidence of other crimes, wrongs or acts of a person

---

[3] In the usual case, it is the defendant who argues that the inclusion of evidence will have a prejudicial effect that will outweigh its probative value. Here, the state argues for its preclusion.

is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. . . . Moreover, our Supreme Court has held that [prior misconduct] evidence may be used to complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings. . . .

"To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, [the court has] adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence." (Internal quotation marks omitted.) *State* v. *William C.*, supra, 103 Conn. App. 516–17.

"[T]here are situations where the potential prejudicial effect of relevant evidence would suggest its exclusion. These are: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the [party against whom the evidence is offered], having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) *State* v. *Warren*, 100 Conn. App. 407, 420, 919 A.2d 465 (2007).

In the present case, the court, relying on *State* v. *Pittman*, 209 Conn. 596, 553 A.2d 155 (1989), concluded

that the existence of a criminal complaint against Wilde and the names of the two charges against him were relevant, but the details underlying the charges, particularly the uncharged sexual assault allegation, were not. The court did not find credible the defendant's argument that the details of the uncharged sexual assault allegation were relevant to his lack of a motive for the crimes with which he was charged. Regardless of whether the details of a sexual assault may have been relevant to Wells' motive to assault Wilde, those details would not tend to disprove any motive of the defendant. Excluding the testimony related to the uncharged misconduct, the defendant had evidence supporting his claim that Wells had a clear motive to assault Wilde that he did not. The details of the uncharged sexual misconduct were not relevant to the defendant's motive or lack of a motive.[4] Even if minimally relevant or probative of the defendant's defense, namely, his lack of intent, the details of a sexual nature were likely to distract the jury from the primary issues of the case. Thus, the court's decision to preclude the uncharged sexual misconduct evidence was not an abuse of discretion, and we conclude that the court properly granted the state's motion in limine.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The motive for the crimes with which the defendant was charged, on the basis of the evidence, may have been his longtime friendship with Wells.