# STATE OF CONNECTICUT *v.* ALBERT KALIL
## (AC 32804)

Lavine, Robinson and Bear, Js.

Argued March 7—officially released July 3, 2012

*Daniel J. Krisch*, special public defender, with whom, on the brief, was *Dana M. Hrelic*, for the appellant (defendant).

*Michele C. Lukban*, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Peter A. McShane*, state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Albert Kalil, appeals from the trial court's judgment of conviction, following a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103 (a) and larceny in the second degree in violation of General Statutes (Rev. to 2009) § 53a-123 (a). On appeal, the defendant contends that (1) the court improperly admitted the testimony of a Rhode Island police officer because the prejudicial effect of his testimony far outweighed its probative value, (2) there was insufficient evidence to prove that the defendant was guilty of burglary in the third degree or larceny in the second degree and (3) the court improperly joined the defendant's trial with that of his codefendant, Joseph Cote, when their defenses were mutually antagonistic. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 10 a.m. on January 27, 2009, Judith Stanton left her home located at 677 Pequot Trail in Stonington (Stonington property). When Stanton returned at approximately noon, she realized that the

telephone was no longer on the wall, the liquor cabinet was open and drawers had been opened in every room upstairs. Her jewelry box had been "torn apart," and pocket watches that were on display in a cabinet were missing. Jewelry, several $2 bills, a federal note and six $100 bills were missing from the property.

Lucinda Wesson, a resident of 672 Pequot Trail in Stonington lives directly across from the Stonington property. On the morning of January 27, 2009, she noticed a car she did not recognize parked on her street. It was a dark colored[1] convertible Saab with a Massachusetts license plate. At that time, no one was in or near the car. Some time later, Wesson went to the other side of her home, and she again saw the car because it was stationed outside of her property. At this time, the passenger's side door was open, and a man was wandering in the middle of the street, appearing as if he were looking for something. The person driving the car told the passenger to get in the car, and the parties then left. Each of the individuals had a "very thick Massachusetts accent." From her standpoint in her home, she believed the individual outside of the vehicle was approximately six feet tall,[2] and she apprised police that he was of Italian descent, with black hair, between forty and fifty years old, approximately 200 pounds and wearing a red sweatshirt type of jacket.[3]

An investigation at the Stonington property revealed that force had been used to open the rear door. An area of weather stripping that ran down the exterior of the door had been manipulated or moved. The damage was

---

[1] In her statement to the police, she indicated that the vehicle was dark green.

[2] She also testified that she was looking at the individual from an angle and that it was hard to estimate his exact height.

[3] Although she reviewed her statement to the police in which she indicated that the passenger was wearing a red sweatshirt, she testified that she could not remember what color sweatshirt the passenger was wearing.

consistent with forced entry into the house. There were footprints in the snow outside the Stonington property that ran from the front of the home to the back door; however, the police were not able to get foot impressions. The Stonington police filed a report with the National Crime Information Center detailing the incident.

On January 27, 2009, at approximately 1:45 p.m., Raymond Driscoll, the police chief in Richmond, Rhode Island, drove past the home of an acquaintance located at 122 Kingston Road in Richmond (Rhode Island property). The homeowner's truck was not on the property; however, there was a black Saab convertible with Massachusetts license plates parked in the yard. Driscoll observed two men standing in front of the garage door looking into the garage through a window. He then observed one of the men looking through a door at the front step next to the garage. This man was "alternately looking over his shoulder between looking into the house." One of the men noticed that Driscoll was watching, and both men quickly walked to the Saab and drove away.

Driscoll followed the vehicle, which pulled into an abandoned gasoline station parking lot. While Driscoll was calling for additional police support, the operator of the vehicle got out of the car and walked over to him. Driscoll asked the operator for his license and registration, which he retrieved. The license identified the operator of the vehicle as Cote, and his passenger was identified as the defendant.[4] Cote volunteered that he and the defendant were on their way from the casino and had gotten lost. Cote stated that they had stopped at the house to ask for directions and that they were running out of gasoline. Driscoll asked Cote to turn the

---

[4] The police later determined that the car was registered to Cote's sister.

vehicle on, and Driscoll observed that the vehicle had more than one quarter of a tank of gas remaining.

The defendant was wearing a "sweatshirt type jacket," and he had a pair of blood-stained, white athletic socks in his jacket pockets. There was also a cut on the defendant's hand. When asked why he had socks in his jacket pocket, the defendant responded that he had "bad feet." The defendant stated that he and Cote were at the casino, and he had won $100. When asked why he was at the Rhode Island property, the defendant stated they were lost and running out of gasoline and had stopped to ask for directions. When asked how they could be running out of gasoline when there were four gasoline stations within a mile and one quarter of where they were located, the defendant responded that he did not know. When asked why they chose to stop at the Rhode Island property and ask for directions when there were no cars in the driveway, the defendant responded that he did not know.

After obtaining Cote's consent, Driscoll searched the vehicle, finding some articles of clothing in the backseat, a pair of black gloves on the center console and a screwdriver, a pry bar and a hatchet/hammer in the trunk. When the additional police support arrived, Driscoll went back to the house and noticed two sets of footprints in the snow leading from the front of the home to the rear of the home and back to the front.[5] He could see where an individual had stopped on the back step and presumably looked into the house through the back door. There did not appear to be any entry into the house.

Driscoll placed the defendant in the backseat of an officer's cruiser and asked Cote to follow him to the police station. He pulled into the parking area behind

---

[5] Driscoll testified that the owner of the property indicated that there should not have been any footprints in the back of his house.

the station, and Cote pulled up to the front of the station. After parking, Driscoll went to the front of the police station, and "Cote was standing on the sidewalk in front of the Saab . . . right in front of a row of small shrubbery that's in front of the police station." Driscoll again obtained consent to search Cote's vehicle, and he seized the hatchet/hammer, screwdriver and pry bar. When looking through the interior of the vehicle, the police seized a costume jewelry gemstone. The gemstone was approximately one-quarter inch by one-quarter inch in size and blue or green in color. It was found between the driver's seat and the passenger's seat in the Saab.

The Richmond police later recovered a bag from the bushes in front of the Saab that was parked in the police department parking lot. Inside the bag, there were various types of jewelry, including pocket watches, rings and bracelets. The bag contained approximately fifty pieces of jewelry. The bag also had a piece of jewelry with gemstones that matched the gemstone found inside the vehicle.

The Stonington police were notified that the Richmond police department had found individuals and goods that were consistent with the Stonington burglary. The Stantons viewed the jewelry obtained by the Richmond police department and identified it as their property.[6] The defendant and Cote thereafter were arrested by the Stonington police and charged with burglary in the third degree and larceny in the second degree.

The jury found the defendant and Cote guilty of burglary in the third degree in violation of § 53a-103 (a)

[6] Stanton created a list with all of the items taken from her property, and the approximate value of each of the items. The list identified thirty-nine pieces of jewelry and their approximate values as well as money and a telephone that was taken. The total value of the property taken was approximately $8104.50.

and larceny in the second degree in violation of General Statutes (Rev. to 2009) § 53a-123 (a). The defendant was sentenced to a total effective sentence of nine years incarceration. Additional facts will be set forth where necessary.

I

The defendant's first claim on appeal is that the court improperly admitted the testimony of Driscoll when the prejudicial effect of his testimony far outweighed its probative value. The defendant contends that Driscoll's testimony was not relevant to complete the story of the burglary and the capture of the defendant nor was it proof of the defendant's intent. Rather, the defendant argues it was evidence only of his bad character, and, therefore, was unduly prejudicial.

The following additional facts are relevant to the resolution of the defendant's claim. Prior to trial, defense counsel filed a motion in limine to bar Driscoll's testimony about any observations that he made prior to stopping the defendant and Cote in Rhode Island on January 27, 2009. Counsel argued that allowing Driscoll to testify as to the nature of the incident he observed would be extremely prejudicial to the defendant, as the defendant was not charged for that incident and it was separate from the charges in Connecticut. The state, in turn, argued that the testimony would complete the story of the Stonington burglary and demonstrate the defendant's intent to commit the Stonington burglary. The court determined that the testimony was admissible to complete the story. The court cited *State* v. *Ali*, 233 Conn. 403, 427, 660 A.2d 337 (1995), for the proposition that misconduct evidence is admissible to "complete the story of the charged crime by placing it in the context of nearby and nearly contemporaneous happenings." (Internal quotation marks omitted.) Further, the court determined that the evidence was relevant to

the defendant's intent. The court therefore denied the motion in limine.

After Driscoll testified as to his observations of the defendant prior to stopping the Saab, the court gave a limiting instruction to the jury directing the jury to consider such testimony only if it determined that the conduct occurred and that it supported the issue of intent or completing the story.[7] Similarly, during its charge to the jury after closing arguments, the court again instructed the jury that it could consider this portion of Driscoll's testimony only if it concluded that it demonstrated the defendant's intent during the Stonington burglary or if it completed the story of the Stonington burglary.[8]

---

[7] The court stated the following in its limiting instruction: "The evidence offered by the state of alleged subsequent acts of misconduct by the defendants at 122 Kingston Road in Richmond, Rhode Island is not being admitted to prove the bad character of either of the defendants or either of the defendant's tendency to commit a criminal act. This evidence is being admitted to show or establish the existence of each of the defendant's intent on the charges of burglary and/or larceny, which is a necessary element of each of those crimes.

"It is also being offered to place in the context the events alleged to have occurred on the date in question. You may not consider such evidence as establishing a predisposition on the part of either defendant to commit the crimes charged or to demonstrate a criminal propensity. You may consider such evidence if you conclude that such conduct occurred and further find that it logically, rationally, and conclusively supports the issues for which it is being offered by the state, but only as it may bear on the issue of intent or placing the events of the date in context.

"On the other hand, if you do not conclude that such conduct occurred or even if you do, if you find that it didn't logically, rationally and conclusively assist on the issue of the intent or placing into context the alleged events that occurred on the date in question, you may not consider the testimony for any purpose, for some only on the issue of intent and place in context the events that alleged to have occurred on January 27, 2009, and for no other purpose."

[8] The court stated the following in its charge to the jury: "Any testimony or evidence which I identified as being limited to a purpose, you will consider only as it relates to the limits for which it was allowed, and you will not consider such testimony and evidence in finding any other facts as to any other issue.

"For example, the state offered evidence of the alleged act by one or both of the defendants which occurred shortly after the act alleged to have occurred at the home of Judith Stanton on January 27, 2007. The evidence

On appeal, the defendant contends that Driscoll's testimony was relevant only to demonstrate why he stopped the defendant and Cote in Rhode Island. The defendant argues that by admitting the evidence, the state painted the defendant as a habitual criminal and suggested that the behavior observed by Driscoll made it more likely that the defendant and Cote were guilty of the Stonington burglary.

"We review the defendant's evidentiary claim by employing the abuse of discretion standard. The admission of evidence of . . . uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . Our review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . .

"[E]vidence is relevant if it has a tendency to establish the existence of a material fact. . . . Relevant evidence

offered by the state of subsequent acts of alleged misconduct by the defendants at or near 122 Kingston Road in Richmond, Rhode Island was not admitted to prove the bad character of either of the defendants or either of the defendant's tendency to commit criminal acts. This evidence was admitted solely to show or establish the existence of each of the defendant's intent on the charges contained in each information of burglary and/or larceny, which is a necessary element of each of these crimes. It was also offered to place into context of the events alleged to have occurred on the date in question.

"You may consider such evidence as establishing a predisposition on the part of either defendant to commit the crimes charged or to demonstrate a criminal propensity. You may consider such evidence if you conclude that such conduct occurred and further find that it logically, rationally, and conclusively supports the issues for which it is being offered by the state, but only as it may bear on the issue of intent or placing the events of the date . . . into context.

"On the other hand, if you do not conclude that such conduct occurred, or even if you do, if you find that it doesn't logically, rationally, and conclusively assist on the issue of intent or placing into context the events alleged to have occurred on the date in question, you may not consider this testimony for any purpose."

is evidence that has a logical tendency to aid the trier [of fact] in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . .

"Connecticut Code of Evidence § 4-5 (b) provides: Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. . . . Moreover, our Supreme Court has held that [prior misconduct] evidence may be used to complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings. . . .

"To determine whether evidence of [other] misconduct falls within an exception to the general rule prohibiting its admission, [the court has] adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Scheck*, 106 Conn. App. 81, 88–90, 940 A.2d 871, cert. denied, 286 Conn. 918, 945 A.2d 979 (2008).

To prove that the defendant was guilty of both burglary in the third degree and larceny in the second degree, the state needed to prove that the defendant intended to commit those crimes.[9] "Because intent is

---

[9] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with *intent* to commit a crime therein." (Emphasis added.)

General Statutes § 53a-123 (a) provides in relevant part: "[A] person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119 . . . ."

almost always proved, if at all, by circumstantial evidence, [other] misconduct evidence, where available, is often relied upon." (Internal quotation marks omitted.) *State* v. *Pereira*, 113 Conn. App. 705, 713, 967 A.2d 121, cert. denied, 292 Conn. 909, 973 A.2d 106 (2009).

It was not an abuse of the trial court's discretion to admit Driscoll's testimony concerning his observations of the defendant and Cote prior to stopping the automobile in Rhode Island as evidence relevant to the defendant's intent. Misconduct evidence may be admitted "where it is independently probative and relevant to establish intent." *State* v. *Amaral*, 179 Conn. 239, 244, 425 A.2d 1293 (1979). Our appellate courts have affirmed convictions where misconduct evidence that was similar in some facets to the crime charged was admitted to demonstrate intent. In *State* v. *Amaral*, supra, 244–45, our Supreme Court stated: "Under a charge of possession with intent to sell, the fact that in the past the defendant had been a seller of the drug would tend to characterize the nature of his possession of the drug at the time of the alleged offense."

Furthermore, in *State* v. *McFarlane*, 88 Conn. App. 161, 162, 868 A.2d 130, cert. denied, 273 Conn. 931, 873 A.2d 999 (2005), the defendant was convicted of burglary. On appeal, the defendant argued that uncharged misconduct evidence involving other burglaries should not have been admitted to demonstrate intent. Id., 163–64. This court held that the evidence was indeed relevant to the defendant's intent. The court determined that "the fact that the defendant previously had served as a lookout for the other codefendants in similar burglaries made it more likely that he was serving as a lookout during the crimes at issue and was not

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with *intent* to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." (Emphasis added.)

an innocent bystander as he claimed." Id., 164–65. The court continued by stating that although the crimes were dissimilar in some ways, "they bore a sufficient similarity to the charged crimes to be admissible on the issue of the defendant's intent." Id., 165.

Similarly, in *State* v. *Holliday*, 85 Conn. App. 242, 243, 856 A.2d 1041, cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004), this court upheld a judgment where misconduct evidence was used against a defendant convicted of attempt to commit robbery and conspiracy. On the day of the attempted robbery, the defendant parked his vehicle in the no parking zone outside of a credit union. Id., 244. The defendant and another individual got out of the vehicle wearing latex gloves and dust masks, and the defendant was holding a black bag. Id., 244–45. An employee saw the defendant and locked the door, and the defendant fled the scene. Id., 245. On appeal, the defendant argued that evidence of prior misconduct, namely, another robbery that the defendant had committed, should not have been admitted. Id., 249. This court determined that the prior misconduct evidence was relevant to intent. Id., 250. The court concluded that "the fact that the defendant previously had robbed a bank would tend to characterize the nature of his actions outside the credit union . . . as a step toward his attempt to rob the credit union, rather than an innocent visit to the credit union." Id.

Driscoll testified that the defendant and Cote had parked the Saab and were looking into multiple windows of the Rhode Island property when the homeowners were not home. Upon observing Driscoll watching them, the defendant and Cote walked to their black Saab convertible with Massachusetts license plates and drove away. Driscoll's observation of the defendant and Cote was close in time to the Stonington burglary, occurring only a few hours later. These observations

made it more likely that the defendant's presence outside of the Stonington property was not innocent. It was not an abuse of discretion to admit Driscoll's observations of the defendant and Cote on the Rhode Island property to demonstrate that they held the requisite intent to commit a burglary in Connecticut.

The defendant contends that misconduct evidence that is used to demonstrate intent generally is more probative than prejudicial if the misconduct is the same or very similar, and that Driscoll's observations of the defendant and Cote in Rhode Island were too dissimilar to the Connecticut crime to be admissible. "The high degree of similarity required for admissibility on the issue of identity is not required for misconduct evidence to be admissible on the issue of intent." (Internal quotation marks omitted.) *State* v. *McFarlane*, supra, 88 Conn. App. 165.[10] Here, Driscoll observed a black Saab convertible with Massachusetts license plates and the defendant and Cote peering into multiple windows of the Rhode Island property. Hours earlier, Wesson had observed two men fitting the descriptions of the defendant and Cote in front of the Stonington property in a dark colored Saab convertible with Massachusetts license plates. The fact that the house in Stonington was burglarized and the defendant and Cote were observed peering into windows of an empty house in Rhode Island is sufficiently similar to allow for the evidence to be admissible on the issue of the defendant's intent.

We further note that when the back-up Rhode Island officers arrived at the abandoned gas station, Driscoll went back to the house and noticed two sets of footprints in the snow leading from the front of the home to the rear of the home and back to the front. He observed

[10] We do note that misconduct evidence that is similar to the crime charged generally will make the evidence more probative. See *State* v. *Baldwin*, 224 Conn. 347, 355, 618 A.2d 513 (1993).

where an individual had stopped on the back step and apparently looked into the house through the back door. Likewise, during the investigation of the incident on the Stonington property, police observed footprints in the snow outside the property that ran from the front of the home to the rear door.

Having determined that Driscoll's testimony regarding his observations of the defendant and Cote on the Rhode Island property was relevant and material, we now must address the court's determination that the probative value of the evidence outweighed its prejudicial effect. "Prejudicial evidence is evidence that tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence . . . but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The problem is thus one of balancing the actual relevancy of the other [misconduct] evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Internal quotation marks omitted.) *State* v. *Bunker*, 89 Conn. App. 605, 634, 874 A.2d 301 (2005), appeal dismissed, 280 Conn. 512, 909 A.2d 521 (2006). "Because of the difficulties inherent in [the probative-prejudicial] balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Collins*, 299 Conn. 567, 582, 10 A.3d 1005, cert. denied,     U.S.     , 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011).

Driscoll's testimony concerning his observations of the defendant and Cote was not evidence that would "improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Bunker*, supra, 89 Conn. App. 634. Although some damage to the defendant's case naturally flows from the disputed evidence, the evidence of Driscoll's observations and why he later stopped the Saab was not unduly prejudicial to the defendant.[11]

Furthermore, the court minimized any potential undue prejudice of the prior misconduct evidence by giving the jury detailed limiting instructions as to the role the evidence was to play in its deliberations, and the court repeated its admonition to the jury in its final instructions.[12] "Proper limiting instructions often mitigate the prejudicial impact of evidence of [other] misconduct." (Internal quotation marks omitted.) *State* v. *Orellana*, 89 Conn. App. 71, 89, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005). The court, therefore, did not abuse its discretion when it admitted Driscoll's testimony concerning his observations of the defendant and Cote on the Rhode Island property.[13]

---

[11] "[W]e recognize that [t]here are situations [in which] the potential prejudicial effect of relevant evidence would suggest its exclusion. . . . These are: (1) where the facts offered may unduly arouse the [jurors'] emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it. . . . We note that [a]ll adverse evidence is [by definition] damaging to one's case, but [such evidence] is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted." (Citations omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 398–99, 844 A.2d 810 (2004).

[12] See footnotes 7 and 8 of this opinion.

[13] We need not address whether admitting the testimony for the purpose of completing the story was proper because the testimony was properly admitted to show the intent of the defendant, and therefore any evidentiary impropriety by the trial court was harmless. See *State* v. *Orr*, 291 Conn. 642, 668 n.24, 969 A.2d 750 (2009) ("We note that the trial court admitted

## II

The defendant's next claim on appeal is that there was insufficient evidence to prove that he was guilty of burglary in the third degree or larceny in the second degree. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there

the testimony of these witnesses for the perhaps improper purpose of corroborating the state of mind of the victim. . . . Because the testimony was otherwise properly admissible to show the intent of the defendant, however, any evidentiary or instructional impropriety by the trial court was harmless.").

is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Butler*, 296 Conn. 62, 76–77, 993 A.2d 970 (2010).

"[P]roof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference. Equally well established is our holding that a jury may draw factual inferences on the basis of already inferred facts. . . . Moreover, [i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Citations omitted; internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 339–40, 746 A.2d 761 (2000).

To convict the defendant of burglary in the third degree, the state is required to prove beyond a reasonable doubt that the defendant "enter[ed] or remain[ed] unlawfully in a building with intent to commit a crime therein." General Statutes § 53a-103 (a). "A person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining,

are not open to the public and when the actor is not otherwise licensed or privileged to do so." General Statutes § 53a-100 (b). At the time of the crime, larceny in the second degree required that an individual intentionally deprive another of property and that the value of the property exceed $5000. See General Statutes § 53a-119; General Statutes (Rev. to 2009) § 53a-123 (a).

The defendant contends that there was insufficient evidence to prove that he committed the charged offenses because the state did not establish the essential elements of identity and intent. He argues that the evidence and the inferences drawn therefrom simply demonstrated that the defendant was arrested in a car belonging to Cote's sister, that Cote had the opportunity to place the stolen property in the bushes outside of the Rhode Island police station and that an individual vaguely fitting the defendant's description was seen by Wesson outside of the Stonington property on the morning of the burglary. Taken together, he argues that this evidence was insufficient to prove guilt beyond a reasonable doubt. We disagree.

In proving that the defendant entered the Stonington property unlawfully and intentionally deprived another of property, the state may rely upon direct or circumstantial evidence. See *State* v. *Sherman*, 127 Conn. App. 377, 386, 13 A.3d 1138 (2011). "[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) Id.

We begin by determining that the jury reasonably could have found that the car that was pulled over by Driscoll in Rhode Island was the same car that was parked outside of the Stonington property. The defendant and Cote were pulled over in a black Saab convertible with Massachusetts license plates. This closely

matched the description of the vehicle Wesson observed outside of the Stonington property. Further, the tapestry bag with jewelry from the Stonington property was found in the bushes outside of the Richmond police station, and a gemstone matching a piece of jewelry found in the bag was located in the Saab. Taken together, the jury reasonably could have determined that the black Saab convertible that was stopped by Driscoll in Rhode Island was the same vehicle observed by Wesson parked in front of the Stonington property.

Because the Saab was registered to Cote's sister, and the jury also reasonably could have found that the car pulled over in Rhode Island was the same car parked outside the Stonington property, the jury could infer that Cote was at the Stonington property. Although the defendant was not related to the vehicle's owner, because the defendant's description did not contrast with the description given by Wesson, and he was with Cote in the car at the time that they were picked up in Rhode Island shortly after the Stonington incident, it was reasonable for the jury to infer that he was with Cote at the Stonington property. Wesson saw the Saab sometime between 10 a.m. and noon outside the Stonington property. Wesson thereafter observed two individuals leave the Stonington property in the vehicle. At approximately 1:45 p.m., Driscoll observed the defendant and Cote peering into the windows of the Rhode Island property. It was reasonable and permissible for the jury to infer that the individual with Cote in Rhode Island was the same individual observed by Wesson with Cote at the Stonington property just a few hours earlier.

"[I]n sustaining [burglary] convictions based entirely on circumstantial evidence, this court has relied on evidence that the defendant was at or near the residence at about the time of the burglary and that the defendant was in possession of items stolen from the residence

thereafter." Id., 387–88. In *State* v. *Correa*, 57 Conn. App. 98, 108, 748 A.2d 307, cert. denied, 253 Conn. 908, 753 A.2d 941 (2000), the defendant argued that there was insufficient evidence to sustain his conviction of burglary in the third degree because the state had not presented evidence that he entered the victim's residence. On appeal, this court noted that there was evidence that a car belonging to the defendant's girlfriend was parked near the residence prior to the burglary, the defendant had used the car on the day of the burglary, the defendant matched a witness description of an individual seen in the victim's driveway around the time of the burglary and that some of the victim's jewelry was found after the burglary in the apartment where the defendant was staying. Id., 100–101, 104. This court determined that the cumulative weight of the evidence was sufficient to demonstrate that the defendant unlawfully entered the victim's residence. Id., 110; see also *State* v. *Spikes*, 111 Conn. App. 543, 555–56, 961 A.2d 426 (2008) ("[i]n the present case, on the basis of evidence that the defendant was seen at or near 291 Church Street at about the time of the burglary and that he had on his person at the time he was arrested some of the jewelry stolen from the premises, we conclude that the jury reasonably could have found that he illegally entered 291 Church Street on February 19, 2005, and stole that jewelry"), cert. denied, 291 Conn. 901, 967 A.2d 114, cert. denied, 558 U.S. 898, 130 S. Ct. 249, 175 L. Ed. 2d 170 (2009).

In the present case, the jury reasonably could have inferred that the defendant unlawfully entered the Stonington property and deprived the owners of their property. As already discussed, the jury reasonably could have determined that the defendant was at the Stonington property during the time of the burglary. There was evidence that the door frame of the Stonington property

had been manipulated by some type of tool, and a screwdriver, a hatchet/hammer and a pry bar were found in the trunk of Cote's vehicle. Although there was no direct evidence of the defendant's unlawful entry into the Stonington property, items taken from the Stonington property were later located in Rhode Island after the defendant and Cote were stopped. After being stopped by Driscoll, there was a period of time where Cote was unobserved by the Richmond police, as he drove to the front of the station instead of following Driscoll to the rear of the station. Afterward, the Richmond police located a tapestry bag in the bushes outside of the police station, directly in front of where Cote had parked the Saab. This tapestry bag contained items that were stolen from the Stonington property. Further, the Richmond police later found a gemstone matching a piece of jewelry stolen from the Stonington property in Cote's vehicle.

The defendant argues that he did not have dominion and control over the tapestry bag later found by the Richmond police or the car where the gemstone was later discovered. He contends, therefore, that such evidence cannot be linked to him. We disagree.

Even if we were to assume that the car, gemstone and tapestry bag were not directly linked to the defendant through possession, that is not sufficient for us to conclude that the circumstantial evidence does not link him to the Stonington crimes. Although the evidence indicates that it was Cote who had the chance to deposit the tapestry bag outside of the police station, the jury reasonably could have inferred from the evidence presented that the defendant and Cote worked together on January 27, 2009, and each was involved in the Stonington burglary. There was sufficient evidence presented to allow the jury to infer that the defendant

worked together with Cote during the Stonington burglary, and was fully aware of the presence of the tapestry bag and gemstone in the vehicle. Wesson observed a car matching a description of the car pulled over in Rhode Island parked in front of the Stonington property and two individuals leaving the scene in the vehicle. Wesson observed the vehicle twice; the first time nobody was in or around the vehicle. On the basis of Wesson's testimony, at one point both men were away from the vehicle and the jury reasonably could infer that it was during this time that the men entered the Stonington property. Further, because both the defendant and Cote were observed by Driscoll peering into the house in Rhode Island, the jury reasonably could have inferred that such action was in preparation for jointly entering the Rhode Island property. While on the Rhode Island property, both the defendant and Cote were away from the vehicle, as was true in Stonington, and actively were involved in peering into the property when the homeowners were not home. Based on the fact that the men were working together in Rhode Island, the jury could reasonably infer that they worked together in the Stonington burglary as well. The jury was entitled to infer through the cumulative evidence outlined previously that the defendant unlawfully entered the Stonington property.

We also note that the defendant made statements to the police that evinced a consciousness of guilt. "Additionally, the state of mind that is characterized as guilty consciousness or consciousness of guilt is strong evidence that a defendant is indeed guilty. . . . We have held that misstatements of an accused, which a jury could reasonably conclude were made in an attempt to avoid detection of a crime or responsibility for a crime or were influenced by the commission of the criminal act, are admissible as evidence reflecting a consciousness of guilt." (Citation omitted; internal quotation

marks omitted.) *State* v. *Moody*, 214 Conn. 616, 626, 573 A.2d 716 (1990). Testimony was provided that after the defendant and Cote were pulled over, the defendant made statements that were indicative of a consciousness of guilt. When asked why he and Cote were at the Rhode Island property, the defendant stated that they were lost, running out of gas and needed directions. When the car was turned on, however, the car had over one quarter of a tank of gas. When asked how they could be running out of gas when there were multiple gas stations in the area, the defendant responded that he did not know. When asked why they chose to stop at the Rhode Island property to ask for directions when there was no vehicle on the property indicating that someone was home, he responded that he did not know. Through these statements, the jury reasonably could have inferred that the defendant was attempting to avoid detection of his improper actions at both the Rhode Island and the Stonington properties. Although the evidence in this case is circumstantial, the jury reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt.

## III

The defendant's last claim on appeal is that the court improperly joined the defendant's trial with that of his codefendant, Cote, when their defenses were mutually antagonistic. The defendant contends that the core of his defense was directly at odds with the core of his codefendant's defense, as he intended to highlight that the evidence only linked Cote to the crime and not him, and that the joint trial therefore made it impossible for him to disassociate himself from Cote.

The following additional facts are relevant to the resolution of the defendant's claim. The state filed a motion to consolidate the defendant's case with Cote's

case. Defense counsel opposed the motion and argued that joinder of the trials would be prejudicial to the defendant because the defenses in the two cases were antagonistic to each other. Defense counsel argued that he expected to argue at the end of trial "that if th[e] jury finds that there was enough evidence to convict anyone of burglary it would not be [the defendant] it would be the other gentleman." The court stated that there had to "be more than mere pointing" to consider defenses to be antagonistic. The court determined that it could keep the evidence separate and issue appropriate charges to the jury to make it clear what evidence was to be used against the defendant and against Cote. The court thereby granted the state's motion for consolidation. The defendant moved to sever the trials on February 17, 2010, but the court denied the motion.

"[W]hether to consolidate or sever the trials of defendants involved in the same criminal incident lies within the sound discretion of the trial court. . . . A separate trial will be ordered where the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. . . . [T]he phrase prejudicial to the rights of the [accused] means something more than that a joint trial will probably be less advantageous to the accused than separate trials." (Internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 620, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

"The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded. . . . [W]e will reverse a trial court's ruling on joinder only where the trial court commits an abuse of discretion that results in manifest prejudice to one or more of the defendants." (Citation omitted; internal

quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 575–76, 747 A.2d 487 (2000).[14]

"The test for antagonistic defenses provides: When . . . the jury can reasonably accept the core of the defense offered by either defendant only if it rejects the core of the defense offered by his codefendant, the defenses are sufficiently antagonistic to mandate separate trials. . . . To compel severance the defenses must be antagonistic to the point of being irreconcilable and mutually exclusive. . . . Such compelling prejudice does not arise where the conflict concerns only minor or peripheral matters which are not at the core of the defense." (Citation omitted; internal quotation marks omitted.) Id., 576.

The defendant contends that the core of his defense was directly at odds with that of Cote, because his strategy was to highlight that the evidence linked only Cote to the Stonington burglary. The defendant contends that it was impossible to employ this strategy at trial because he and Cote were jointly tried. Accordingly, he contends that he was prejudiced by the trial court's granting of the state's motion for consolidation and the court's denial of his motion to sever.

The defendant cites *State* v. *Vinal*, 198 Conn. 644, 504 A.2d 1364 (1986), in support of his argument that

[14] We note that our Supreme Court recently decided *State* v. *Payne*, 303 Conn. 538, 549, 34 A.3d 370 (2012), in which it rejected the "blanket presumption in favor of joinder" in cases involving multiple informations against the same defendant. The *Payne* decision did not indicate whether its holding would apply in cases involving the joinder of multiple defendants, however, we recognize that the same issues addressed in *Payne* may be present in such cases. In *Payne*, however, the court concluded that "[d]espite our reallocation of the burden when the trial court is faced with the question of joinder of cases for trial, the defendant's burden of proving error on appeal when we review the trial court's order of joinder remains the same." Id., 550 n.11. Therefore, for the purposes of this appeal, our standard of review remains the same and we seek to determine whether joinder resulted in manifest prejudice to the defendant. *State* v. *Ortiz*, supra, 252 Conn. 575–76.

because he wanted to argue that the evidence linked Cote to the burglary, he and Cote had antagonistic defenses. In *State* v. *Vinal*, supra, 650, the state sought to prove that either the defendant or his codefendant had shot the victim. At trial, each of the defendants introduced evidence to incriminate the other. Id. The Supreme Court determined that the trial court had abused its discretion in holding a joint trial when both defendants "out of necessity, sought to blame each other for the victim's death and constantly fought to frustrate each other's attempt to create doubt in the minds of the jurors." Id., 652.

*State* v. *Vinal*, supra, 198 Conn. 644, however, is distinguishable from the facts of the present case. In *State* v. *Vinal*, supra, 650, the prosecutor sought to prove that one of the defendants shot the victim. In the present case, burglary and larceny are not crimes that only can be committed by one person at a time, rather they are crimes which can be committed simultaneously by more than one individual. Furthermore, in *Vinal*, each defendant sought to prove that the other defendant was solely responsible for the crime and introduced evidence to incriminate the other defendant. Id. In the present case, the defendant did not present evidence nor argue that Cote was the sole individual responsible for the crime. Instead he argued that the evidence did not link him to the crime. The vehement arguments and evidence introduced to incriminate the other defendant in *Vinal* simply are not present in this case.

Applying the standard to the facts of this case, we conclude that the court did not abuse its discretion in consolidating the trials of the defendant and Cote. Both of them were charged with the same crimes, involving the same evidence and alleged acts. Neither the defendant nor Cote testified or presented witness testimony. Each presented his defense through cross-examination of the state's witnesses and through closing argument

only. The defendant and Cote attempted to cast doubt on the investigations that took place in Connecticut and Rhode Island and each contended that there was insufficient evidence to demonstrate that they committed the alleged crimes.[15] The defendant also argued that if the evidence was connected to anyone it was Cote and not the defendant, as Cote was the driver of the vehicle and was the only one who could have put the tapestry bag in the bushes outside the police station in Rhode Island.[16] This argument, however, is not sufficient to demonstrate that he had an antagonistic defense such that his and Cote's defenses were at "the point of being irreconcilable and mutually exclusive." (Internal quotation marks omitted.) *State* v. *Ortiz*, supra, 252 Conn. 576. The defenses were not incompatible because the jury reasonably could have accepted the defenses simultaneously, finding that there was

[15] In closing argument defense counsel argued: "I suggest that a serious review of the evidence . . . will lead you to conclude that the state has not reached that level of proof required to convict [the defendant]." Defense counsel also pointed out apparent inconsistencies such as Wesson's description of the perpetrators as being six feet tall, her description of the vehicle as green and that an individual was wearing a red sweatshirt and no red sweatshirt was recovered. Cote's counsel also pointed out apparent inconsistencies in the evidence and finished by arguing that "what [the state] would like you to believe is that these guys were there in Rhode Island with [the jewelry], therefore they went into the Stanton residence and took it. That's a big leap, ladies and gentlemen. There's a lot of reasonable doubt of one to the other."

[16] Defense counsel argued in closing arguments: "Who was the driver? It seems to be, under the state of the evidence, Mr. Cote. Consistent. Who was the person in control of the car? Mr. Cote. The chief asked his permission to search. He doesn't ask for [the defendant's] permission. Why would that be? Because the driver's in control of the car. Were those items ultimately recovered outside of the police station and [identified] by Mrs. Stanton in that car at the time the car was searched by the chief? I think you might conclude that I'm not telling you how to make that judgment. You might conclude that. And if you do, I think you might assume those items were well hidden. They escaped the police search. How do you attribute knowledge of the existence of those things to [the defendant]? How is conscious or constructive possession of those items and the implications controlled therefrom attributable to [the defendant]? I suggest on the evidence it can't."

insufficient evidence to convict either the defendant or Cote.

Moreover, the risk of prejudice to the defendant was mitigated by the court's repeated instructions to the jury.[17] "Cautionary instructions to the jury concerning what evidence may be considered against which defendant can often alleviate any potential prejudice. The spillover effect . . . usually is best avoided by precise instructions to the jury on the admissibility and proper uses of the evidence introduced by the government." (Internal quotation marks omitted.) *State* v. *Jackson*, 73 Conn. App. 338, 368, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002). "The jury [is] presumed to follow the court's directions in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Booth*, supra, 250 Conn. 626. We therefore conclude that the trial court did not abuse its discretion

---

[17] During the preliminary instructions to the jury before the start of evidence, the court advised: "There are two defendants on trial here, although the defendants are being tried together you must consider the case against each separately. That is your findings in one case do not in themselves establish a basis for similar finding in the other case, each defendant is to be considered as if it was alone in the offenses for which he stands charged. You will be required therefore to render a verdict upon each defendant separately."

During its charge to the jury, the court stated: "Now, there are multiple defendants in this case. There are two defendants on trial here. Although the defendants are being tried together, you must consider the case against each separately. That is, your findings in one case do not in themselves establish a basis for similar findings in the other case. . . . I remind you that during the course of the trial, certain evidence was admitted for you to consider in the case of Joseph Cote, but you were not instructed to consider this particular evidence in connection with the other defendant . . . . This evidence was the statements alleged to have been made by Mr. Cote to Chief Raymond Driscoll . . . in Rhode Island. Similarly, certain evidence was admitted for you to consider of the [defendant], but you were instructed not to consider this particular evidence in the charges against Mr. Cote. This evidence was statements alleged to have been made by [the defendant] to Sergeant Arnold . . . . Your verdict for each defendant must be based solely on the evidence that was admitted for your consideration with respect to that particular defendant."

in finding that no substantial injustice was likely to result from a joint trial of the defendant and Cote. Accordingly, the motion to consolidate was properly granted and the motion to sever was properly denied.

The judgment is affirmed.

In this opinion the other judges concurred.